————o————

THE CITY OF HANNIBAL, Plaintiff in Error, *vs.* WINCHELL, EBERT & LAMB, Defendants in Error.

1. *Corporations, municipal—Hannibal, City of—Wharves, altering and extending—Statutes, construction of.*—The power to alter wharves, given to the city of Hannibal (Amended Charter of 1860-1), includes a power to extend or diminish them.

*Error to Ralls Circuit Court.*

*Arthur B. Wilson,* for the Plaintiff in Error

I. The city had power to condemn private property for the establishment of a public wharf. (Sess. Acts, 1851, p. 333, § 22; Sess. Acts 1860-1, p. 247, § 15; City of Hannibal vs. Han. & St. Joe R. R., 49 Mo., 480.)

II. The power to take private property for opening a public wharf includes *a priori* the power to establish a public wharf. Statutes made in *pari materia* are to be taken and construed together in the light of each other, the better to determine the ultimate object of inquiry. (6 Bac. Ab. Tit., Stat., 382; Rex vs. Loxdale, 1 Burr., 447; Church vs. Croker, 3 Mass., 71.) Any doubt, as to the power of the city under § 22 of Act 1851, *supra*, to condemn private property for wharf purposes, is entirely removed by § 15 of the Act of 1860-1,

*supra*, which not only delegates, but unequivocally and distinctly assumes, and recognizes, the existence of the power in the city. (Dill. Mun. Corp., § 657; St. Louis vs. Russell, 9 Mo., 507; City of Hannibal vs. Han. & St. Joe R. R., 49 Mo., 480.)

III. It nowhere appears that any land whatever was to be taken from defendants for the proposed wharf, and the finding of the jury, so far as they are concerned, was solely with reference to damages and benefits to the adjacent block, which they owned.

IV. Had the jury, however, failed to ascertain the actual value of the land proposed to be taken, such fact would not of itself justify a dismissal of the proceedings. The Circuit Court should try the case *de novo*, like appeals from a justice of the peace; (Sess. Acts 1870, p. 302, §§ 1, 5,) and such being the case, it was error to dismiss the proceedings " for any error, defect or other imperfection " in the proceedings before the jury. (Matlock vs. King, 23 Mo., 400 ; McDowell vs. Strong, 35 Mo., 505.)

*Geo. H. Shields, with whom were W. C. Forman and W. P. Harrison,* for Defendants in Error.

I. The city of Hannibal had no power to condemn private property for public use as a " wharf."

(*a.*) The right of eminent domain vests primarily in the legislative department of the State. It may be delegated to municipal corporations, but being a delegated power it must be expressly not impliedly conferred. (Dill. Mun. Corp., §§ 468, 469, and notes.)

(*b.*) Corporate powers can never be created by implication nor extended by construction. (Penn. R. R. Co. vs. Canal Com'srs., 21 Penn. St., 9; Sedg. Stat. & Const. Law, 338-9, 351 ; Beaty vs. Lessee of Knowler, 4 Pet., 152; Cooley Const. Lim., 194-5, 530.)

(*c.*) The only implied powers of a municipal corporation are those necessary to carry into effect those powers expressly granted or those essential to the declared objects and pur-

poses of the corporation not simply convenient, but indispensable. (Dill. Mun. Corp., 101-2-3-4 and notes; Minturn vs. Lane, 23 How. (U. S.), 435; Thompson vs. Lee Co., 3 Wall., 327; Leonard vs. Carter, 35 Miss., 189; Lafayette vs. Cox, 5 Ind., 38; Willard vs. Killingworth, 8 Conn., 247; 10 Conn., 442; New London vs. Brainard, 22 Conn., 552.) With these limitations the power of the city must be construed, and if found doubtful, or defective, the doubt must be resolved in favor of the citizen and against the power.

II. The power is, if at all, conferred by two sections in the charter; the first of which (Sess. Acts 1851, p. 333, § 22) grants authority " to erect, repair and regulate public wharves and docks;" and the second (Sess. Acts 1860-1, p. 247, § 15), uses these words: " When it shall become necessary to take private property for opening, widening or altering any public street, lane, avenue, alley, wharf or square, the Mayor shall cause," &c.; and no power exists in the charter on this subject. To " erect," means to construct, improve, grade or pave. To " repair," means to put in order, and keep so, that which is already " erected."

To " regulate," means to prescribe manner of use, charges, &c. ; true, one of the words carries with it the idea of " establishing," but admitting *arguendo*, that the power to " establish " exists, it does not include power to " extend " or power to take by the exercise of the right of eminent domain, private property for this purpose.

III. The right of condemnation, if ever conferred by implication, would exist only in some municipal need incidental to the existence of the corporation, usual to be conferred and absolutely necessary, such as the power to open streets, lanes, alleys, &c. The use of wharves is not so necessary. Their erection is "an extra municipal, special power, conferred only on corporations bordering on high seas or navigable waters, and is not one strictly relating to municipalities." (Dill. Mun. Corp., 117, § 6.) Hence the power must be specific and express, as there is no intendment in its favor.

IV. The 15th section of the charter, 1860-1, is merely

directory of the manner of proceeding in condemnation, and of itself confers no power to condemn. It presumes by its terms a grant of power to condemn elsewhere. "When it becomes necessary to take" does not mean "The city can take when necessary." It means, "The power to take being granted, you shall exercise it when necessary in the following manner:"

V. The charter of 1851 (§ 16), granted power to "open, alter, widen, extend, establish, grade, and pave the streets, sidewalks, alleys, avenues and private roads," and in section 1 the language, "when it shall become necessary," is used, and it evidently was intended to be construed with § 16, granting the power to condemn, &c. In the amendment of 1860-1, § 15, the words "wharf and square" were for the first time used, and they were interpolated without any change of the section granting power, or without enacting any section conferring the power to condemn for "wharves or squares;" hence the reasoning of the case of City of Hannibal vs. Han. & St. Joe R. R. Co., 49 Mo., 480, fails in the case at bar both in the existence of the power to "open and establish" streets referred to by the court, and evidently being § 16, p. 336, Acts 1851, and also in the suggestion of the court, that "otherwise this important power would be entirely withheld from the city," referring to it as a necessary power, not so however here.

VI. The argument of plaintiff's counsel, that if the power is not expressly granted by § 22 of Acts 1851, it is by section 15 of October, 1861, "because it not only delegates but unequivocally and distinctly assumes and recognizes the existence of the power in the city," is based on an erroneous construction of the case of St. Louis vs. Russel, 9 Mo., 507. That case has no application here, and Judge Dillon refers to that case (Dill. Munc. Corp., § 657), and immediately cites cases holding to a different doctrine. (Dill. Munc. Corp., 615 n.; Paine vs. Spratley, 5 Kan., 525; 25 Iowa, 163; 23 Iowa, 410.)

VII. The value of the private property proposed to be taken was not assessed by a jury of six disinterested persons;

nor did the jury first ascertain the actual value of the land proposed to be taken for the purpose of a wharf without reference to the proposed improvements. (Amended Charter of 1860-1, § 15.)

VIII. The verdict should have been set aside; but being approved by the acting Mayor, *pro tem*, the proceedings were properly dismissed. (Lock vs. Penn. R. R. Co., 25 Penn. St., 394.) This case is exactly in point on this question.

IX. The taking of private property in derogation of the rights of the citizen can only be justified on the ground of necessity, and, when the power is exercised, the act conferring the right must be strictly complied with. (Leslie vs. St. Louis, 47 Mo., 474; Shaffer vs. St. Louis, 31 Mo., 264; Lind vs. Clemens, 44 Mo., 540; Anderson vs. St. Louis, 47 Mo., 479; Cooley's Con. Lim., 528; Gillinwater vs. Miss. R. R., 13 Ill., 1; Staford vs. Worn, 27 Cal., 171.) The jury did not follow the law conferring the power.

NAPTON, Judge, delivered the opinion of the court.

The only question in this case seems to be in relation to the validity of a city ordinance of the city of Hannibal, passed February 9th, 1870. The proceedings under the ordinance, for the assessment of the damages to defendants, occasioned by the extension of the wharf in front of their property, are admitted to have been regular; but they were dismissed upon motion, for the reason that the city council had no power, at the time said proceedings were instituted, to condemn private property for a wharf. There were other objections, but this is the main one, and the only one necessary to be considered here.

The charter of the city, passed in 1851, grants the power to the city authorities "to erect, repair, and regulate public wharves and docks;" and the amended charter of 1860-1 declares, "when it shall become necessary to take private property for opening, widening or altering any public street, lane, avenue, alley, wharf or square, the mayor shall cause certain proceedings," &c.

It is insisted, that the power to erect does not *ex vi ter-mini* include a power to establish; and if it does, it does not include a power to extend a wharf already established.

We cannot perceive the force of this nice discrimination. It is clear, that the legislature in 1861 understood the previous charter as granting the power "to open, widen or alter public wharves," and made provision for exercising this power.

A power to alter a wharf would seem to mean a power to extend it or diminish it.

There was, therefore, no ground for dismissing the proceedings of the city, by the Circuit Court of Ralls county, and the judgment is reversed and the cause remanded. The other judges concur.