Decided April 17, 1894; affirmed on rehearing August 5, 1895.

## VEDDER v. MARION COUNTY.

[36 Pac. 535; 41 Pac. 3.]

28   77<br>36   541

1. HIGHWAYS—REPORTS OF VIEWERS—TIME FOR FILING REMONSTRANCES—
CODE, ? 4065.— Remonstrances to a petition for the vacation of a
county road, which are filed when the report of the viewers is first
read, are filed in proper time, under section 4065, Hill's Code, pro-
viding that the county court can acquire no jurisdiction prior to
the final reading of the report. This is so regardless of what appeals
or other proceedings may have occurred—the question is whether
the remonstrances were filed before the court acted on the viewer's
report.

2. VACATING AND ESTABLISHING HIGHWAYS.—The establishment of a new
county road upon a petition for the establishment of such road, and
also for the vacation of an old road, does not operate to vacate the
latter, where the new road does not lie within the termini of the old
one, and connects with it only at one end.

3. DISCRETION OF COUNTY COURT IN OPENING ROADS—CODE, ? 4065—RE-
PORT OF VIEWERS.—A county court has a discretion regarding the
opening of roads that is conferred upon it by the express terms of
section 4065 of Hill's Code, and, while it cannot open a road over an
adverse report of the viewers, it need not follow a favorable report,
unless it is satisfied that the proposed road will be of public utility.

4. VACATING AND ESTABLISHING HIGHWAYS.— A petition for the establish-
ment of a road twenty-nine chains long, and for the vacation of an-
other road connecting with the former at one end and forty-two
chains long, and diverging from the former at an angle of more than
forty-five degrees, and intersecting the same highway more than
thirty chains apart, will be considered as two proceedings,— one for
the establishment of a road, and the other for another road,—instead
of a proceeding for the alteration of a highway merely.

APPEAL from Marion: GEORGE H. BURNETT, Judge.

This is a special proceeding by G. W. Vedder
against Marion County to review the action of the
county court in the matter of changing the location of
a county road in said county. The record shows that,
after giving the required notice, the plaintiff and
twenty-seven other householders residing in the vicin-

ity of the proposed road filed in said court the following road petition: "To the County Court of the State of Oregon, for the County of Marion: The undersigned, your petitioners, respectfully ask for the location and establishment of a county road commencing at the northwest corner of the donation land claim of W. Eastham, in section twenty-five, in township five south of range one west, in said county of Marion, thence north about one hundred and sixteen rods to the center of the old county road leading from Shuck's Mill in said Marion County to the town of Woodburn in said county. Application will also be made at the same time to said court to vacate all that portion of the present county road leading from Shuck's Mill to said town of Woodburn, which is situated between the termini of said proposed road, and which runs diagonally across the land claims at present owned by G. W. Vedder and Joseph Schaffer, respectively, in said Marion County." Upon the receipt of said petition the county court appointed viewers and a surveyor, and, after examining and surveying the proposed road, the viewers made their report to the court, in which they recommended that the proposed road be declared a public highway, and that part of the old road running through the lands of G. W. Vedder and Joseph Schaffer be vacated. The surveyor's plat, which forms a part of the viewers' report, shows that a county road extending easterly from the beginning point of the proposed road is intersected one hundred and twenty roads east of said beginning point by the old county road proposed to be vacated, which extends northwesterly across the lands of Vedder and Schaffer, and which also intersects the proposed road at its termini. On July eighth, eighteen hundred and ninety-one, at which time the

viewers' report was filed, objections were made to the
sufficiency of the publication of the road notices, and
the court on the next day made an order dismissing
said petition.   The plaintiff commenced proceedings to
review the action of the county court, and, at the
hearing thereof, the circuit court gave judgment dis-
missing the writ, from which he appealed to this
court, where it was reversed: *Vedder* v. *Marion County*,
22 Or. 264 (29 Pac. 619).   After the cause was re-
manded to the county court a large number of house-
holders, some of whom reside in Clackamas County,
remonstrated against the location of the proposed road
and the vaction of the old one, and four others showed
that if the old road should be vacated they would be
deprived of all access to a public road, and filed claims
for damages.   The report of the viewers was, on July
seventh, eighteen hundred and ninety-two, read for
the first time, laid on the table for further considera-
tion, and the matter continued to the August term,
when the court, upon motion, ordered the names of the
remonstrators residing in Clackamas County stricken
from the remonstrance.   This being done, the court,
treating the respective parts of the petition asking for
the establishment of the new and the vacation of the
old road as separate petitions, and, under a rule inter-
preting the term "vicinity" to mean a territory within
two miles of a proposed road, and within the same
distance from an established road along its entire
length, when any part of it is proposed to be vacated,
found that it contained a less number than the peti-
tion for the new road, but a greater number than the
petition for the vacation, and made an order estab-
lishing the new road as prayed for, but refused to
vacate the old one.   The plaintiff thereupon com-
menced this proceeding, and the record of the county

court having been certified to the circuit court, a trial was had resulting in a judgment on the seventeenth day of February, eighteen hundred and ninety-three, dismissing the writ, from which judgment the plaintiff appeals.                                        AFFIRMED.

For appellant there were briefs and oral arguments by *Messrs. Bonham and Holmes.*

For respondent there were briefs and oral arguments by *Messrs. D'Arcy and Bingham.*

Opinion by MR. JUSTICE MOORE.

1. The report of the viewers having been filed at the July term, eighteen hundred and ninety-one, of the county court, it is contended that no remonstrance thereto filed after the case was remanded could be properly considered by the court. The record shows that the report of the viewers was read for the first time on July seventh, eighteen hundred and ninety-two, at which time the remonstrances were filed. This recital must overcome the presumption, if any existed, that the report was read before the petition was dismissed by the county court on July ninth, eighteen hundred and ninety-one, and as the court could acquire no jurisdiction to grant the petition prior to the final reading of the viewers' report: *Latimer* v. *Tillamook County,* 22 Or. 291 (29 Pac. 734); it follows that the remonstrances were filed in proper time.

2. It is contended that the establishment of the new road vacated the old one, and that as soon as the new road was opened to public travel the old one thereby became discontinued. In *Commonwealth* v. *West-borough,* 3 Mass. 406, PARSONS, C. J., in discussing this

question, said: "For establishing an alteration in a
way is, in law, a discontinuance of the part altered;
and the report of the discontinuance, and the accept-
ance of it, are merely surplusage.   On any other
principle, the applying for an alteration must be an
application for a new way, and not for altering an
old one." In *Commonwealth* v. *Cambridge,* 7 Mass. 157, a
petition for an alteration of an existing highway had
been presented, which was denied, but a new road was
established where the alteration was requested.   It
was held that the alteration of an old way and the es-
tablishment of a new one were substantially different;
that the adjudication of the court was not of the mat-
ters in dispute, and the proceedings were therefore
void.   The rule is well established that when a peti-
tion for the alteration of an existing road has been
granted, all parts of the old road embraced within the
limits of the alteration are vacated by implication,
though no order to that effect be made: *Brooks* v. *Hor-
ton,* 68 Cal. 554 (10 Pac. 204); *Hobart* v. *Plymouth County,*
100 Mass. 159; *Heiple* v. *Clackamas County,* 20 Or. 147 (25
Pac. 291).   Section 4061, Hill's Code, authorizes county
courts to establish, alter, or vacate county roads.   In
the case at bar the petitioners ask for the location and
establishment of a county road.   Their application can
not be treated as a petition for an alteration unless the
legal effect of the vacation of the old and the estab-
lishment of the new road is equivalent thereto.   If this
be the proper construction, then the county court, by
refusing to vacate the old had no authority to establish
the new road, and its order to that effect would be a
nullity: *Commonwealth* v. *Cambridge,* 7 Mass. 157.   The
road established forms the west line or base of a tri-
angle, and it is sought to vacate the hypothenuse, ex-

tending from its northern terminus to a point on an existing county road one hundred and twenty rods east of its southern terminus. If the termini of the road established were within the limits of the old road, there might be some propriety in holding that the petition was for an alteration of an existing road, as the traveling public could as well be accommodated by the new as it had been by the old way, but since the new road does not lie within the termini of the old, and connects with it only at its north end, the county court, in pursuance of a stipulation of the parties and of the character of the pleadings, properly construed the application to be two petitions,—one for the location and establishment of a new road, and the other for the vacation of an old one,—and could therefore grant or deny either, and hence the establishment of the new road did not operate to vacate the old one.

3. It is also contended that, the viewers having recommended the vacation of the old road, the county court was obliged to grant it. Section 4065, Hill's Code, provides that, "the court, being satisfied that such road will be of public utility, the report of the viewers being forwarded thereto, the court shall cause said report, survey, and plat to be recorded, and from thenceforth said road shall be considered a public highway, and the court shall issue an order directing said road to be opened." It is quite probable that the word "favorable" was intended where "forwarded" is used in said section. This construction would preclude the court from establishing a county road in the following instances: (1) When the viewers' report is unfavorable thereto; (2) when a remonstrance with a greater number of qualified remonstrators than there are names on the petition is filed in proper time; and,

(3) when claims for damages are unsettled. This section requires the viewers to make their report on or before the third day of the term of court next after their appointment, and it is made the duty of the county clerk to read said report on two separate days of the meeting thereof. The report of the viewers thus becomes a condition precedent to any action on the part of the court, and, as this requirement appears in the preceding part of the section, it is very apparent that the legislature intended to adopt the word "favorable" when it made use of the word "forwarded." The court would thus be bound by an unfavorable report of the viewers; but must it, when their report is favorable thereto, establish, alter, or vacate the road? The report would certainly be binding upon the court unless it is vested with a discretion by implication, or by the statutory provision that it must be satisfied that the road will be of public utility before it can be established. If the viewers' report be conclusive upon the court, then the petition must be granted, even if the court is not satisfied that the road asked to be established, altered, or vacated is of any utility. In *Commissioners* v. *Bowie*, 34 Ala. 464, the court says: "Upon the question of the expediency of opening or altering a public road, that court exercises a *quasi* legislative authority, and its decision is not revisable. In the exercise of that authority, it does not act alone upon evidence produced according to legal rules, but is guided, to some extent, by its knowledge of the geography of the country, the wants and wishes of the people, and the ability of the neighborhood to keep the road in repair." The legislature has delegated to the county court the authority to establish, alter, and vacate county roads, and as the legislature may determine when the necessity for

a public road exists, so the same authority may be exercised by the county court; and if there were no statute vesting it with this discretion, the court, by implication, could exercise such discretion, unless prohibited by statute. Whether a proposed road will subserve the public need or convenience is a question for the legislature, and not for the judiciary: *Sherman* v. *Buick,* 32 Cal. 241 (91 Am. Dec. 577); *Commonwealth* v. *Roxbury,* 8 Mass. 457; and hence the county court, in determining its utility, acts in a legislative capacity. The authority is not only given by implication, but the statute, section 4065, in positive terms grants this power to the county court, and authorizes it to exercise a discretion in the matter; and hence the conclusion reached by the county court upon these legislative questions is not subject to review: *State* v. *Bergen,* 24 N. J. L. 548. The county court, by implication and by statute having authority to disregard the favorable report of the viewers in the matter of the vacation of the road, it follows that the judgment of the circuit court is affirmed.        AFFIRMED.

## ON REHEARING.

Opinion by MR. JUSTICE WOLVERTON.

4. The county court has supervision of all county roads. There are three distinct instances in which the jurisdiction of the court may be exercised: *first,* to establish; *second,* to alter; and, *third,* to vacate. These would seem to be the natural subdivisions for the exercise of its powers as touching the establishment and discontinuance of county roads, from a survey of the statute bearing upon the subject. The language of section 4061, Hill's Code, is: "No county road shall be hereafter established, nor shall any such road be al-

tered or vacated, in any county in this state, except by the authority of the county court of the proper county"; and of section 4063: "When any petition shall be presented for the action of the county court for the laying out, alteration, or vacation of any county road, it shall be accompanied by satisfactory proof," etc. The jurisdiction of the county court is obtained by petition signed by at least twelve householders of the county, residing in the vicinity where said road is to be laid out, altered, or vacated. It is believed that it is not good practice to combine two of these causes for calling into requisition the functions of the court. STRAHAN, J., in a former appeal of this cause, intimated that in a case where the location of the new road would virtually supersede the old, or render it useless or unnecessary, there could be no objection to combining an application for the location with one for vacation in the same proceeding, but if there should appear to be no connection or relation whatever between the two, no doubt then existed but the better practice would be to prosecute them by separate proceedings: 22 Or. 270 (29 Pac. 619). The reasons for this are substantial. Suppose a petition be filed for the establishment of two distinct and detached pieces of road, separated one from the other by two miles at the nearest point. The householders residing within the vicinity of one may not all reside in the vicinity of the other, and hence those residing without the vicinity of one and within the vicinity of the other could not be legal petitioners for both roads. The same may be said of a petition to establish one road and to vacate another where relatively situated as in the supposed case of a petition for two distinct and detached roads. The application of this principle promotes a construction of the statute which would seem

to be more in consonance with its spirit, as it tends to prevent the combination of different localities to the injury of some other.    It might be possible to vacate a road or a portion thereof by combining it with the location of another, whereas a petition to vacate singly would fail, and *vice versa.*   The power to make altera- tions in county roads is simply the power to make changes therein.    Where an alteration is made, if the route of a road is deflected, the new road takes the place of the old.    Whenever it in effect supersedes the latter, and renders it useless or unnecessary, the old road is thereby discontinued as a necessary conse- quence of the establishment of a different route: *Brook* v. *Horton,* 68 Cal. 554 (10 Pac. 204); *Hobart* v. *Plymouth County,* 100 Mass. 159; *Heiple* v. *Clackamas County,* 20 Or. 149 (25 Pac. 291); *Bliss* v. *Deerfield,* 13 Pick. 107; *Goodwin* v. *Inhabitants of Marblehead,* 1 Allen, 37; *Commonwealth* v. *Inhabitants of Westborough,* 3 Mass. 406; *Bowley* v. *Walker,* 8 Allen, 21.

The petition, which is the foundation for the pro- ceedings in the county court, is as follows: "The un- dersigned, your petitioners, respectfully ask for the location and establishment of a county road commenc- ing at the northwest corner of the donation land claim of W. Eastham, in section twenty-five, township five south, range one west, in said county of Marion, thence north about one hundred and sixty rods to the center of the old county road leading from Shuck's Mill in said Marion County to the town of Woodburn in said county.    Application will also be made at the same time to said court to vacate all that portion of the present county road from Shuck's Mill to said town of Woodburn, which is situated between the termini of said proposed road, and which runs diagonally across the land claims at present owned by G. W. Vedder

and Joseph Shafer, respectively." Since this cause was
remanded upon the former appeal the county court
has treated the application as if two petitions were
presented, one for the establishment of a county road
and the other for the vacation of a portion of a
county road already established. The counsel for
both petitioners and remonstrators have likewise so
treated the petition, and the whole cause has been
tried out in said court upon the theory that two peti-
tions were before it distinct and disconnected one from
the other. It was evidently the intention of the peti-
tioners to institute but one proceeding, and to main-
tain it as such, but since the decision of this court
upon the former appeal the parties and the court be-
low, as well as the county court, have treated it other-
wise. The report of the viewers and the survey show
that the road proposed to be established begins at the
northwest corner of W. Eastham's donation land claim,
and runs thence north twenty-eight and eighty-three
hundredths chains to its intersection with the Shuck's
Mill and Woodburn Road, and the portion of the road
proposed to be vacated begins at a point thirty and
nine hundredths chains east of the northwest corner
of said Eastham's land claim, in the center of the
Shuck's Mill and Gervais Road, and runs in a north-
westerly course to the northern terminus of the pro-
posed new road. There is a county road now opened
and established between the termini of the road to be
vacated and the one to be established. It is now con-
tended upon the rehearing that the petition was in
effect for an alteration in a county road, and that it
should be so considered and treated; that, while it
prays for the location of one road, and the vacation
of another, yet, by reason of the proximity of the
two roads, and the relation they sustain to each other,

it is in effect a prayer for an alteration only. If this contention is sound the cause ought to go back to the court below for another hearing; if otherwise, not.

It may be observed that the south termini of the road to be vacated and the road to be established are three eighths of a mile apart, and that each intersects what is known as the Shuck's Mill and Gervais Road, this latter road forming the base of a right angle triangle, of which the new road would be the perpendicular and the one to be vacated the hypothenuse. It is also apparent that householders residing to the east and just within the vicinity of the southern terminus of the road sought to be vacated would not be within the vicinity of the road sought to be established, and the same would be true on the other hand of householders residing to the west and just within the vicinity of the southern terminus of the road to be established. They would not be within the vicinity of the road to be vacated. Thus, it will be seen that all the parties to the petition and remonstrance herein might not have the statutory qualifications to prosecute or contest the establishment of one or the vacation of the other road, taken singly. This is a strong circumstance showing why it would be better to prosecute such proceedings singly, but it is perhaps not conclusive. Neither is the circumstance that the termini of the two ways are not the same conclusive that the proceeding is not for an alteration. In *Hobart* v. *Plymouth County,* 100 Mass. 159, a petition was filed representing that the highway was narrow and crooked, praying that it might be widened, straightened, and newly located, and such parts discontinued as might be rendered unnecessary by such location; the county commissioners voted to widen the highway to a certain point, thence to locate a new highway to a point on the line of the old

one, and from thence to widen it further along in the
same general direction.    Another public way entered
the old way between the said points.    It was held
that the change in the way between said points was,
in legal effect, only an alteration of the old location,
and that a discontinuance of so much of the old way
as was not included in the new location, nor necessary
for the travel of the connecting way, resulted from
such alteration.    In *Commonwealth v. Boston and Albany
Railroad Company,* 150 Mass. 174, (22 N. E. 913,) a county
road entering another at right angles was deflected at
a point some twenty-eight rods from the point of in-
tersection, and entered the old road about the same
distance north of the old intersection, and it was held
by the court that the portion of the road between the
point of deflection and its first terminus was thereby
vacated.    The new road was forty rods and eight links
in length.    In determining the matter the court said:
"There is nothing in the language of the petition or
of the adjudication to suggest that anything else was
contemplated than a substitution of a new piece of
road for an old one in the same general line of travel."
It was further observed that the distance to be trav-
eled to a certain point was slightly increased, but that
the commissioners had provided for such a use by
making the road six rods wide at its junction, thus
cutting off the corner towards such point.    From this,
and the obligations the town would be under to main-
tain both roads if allowed to stand, the court con-
cluded that the commissioners intended to and did
actually discontinue that portion of the old road be-
tween the point of deflection and the old intersection.
The sides of the triangle formed by the new and the
old ways are about one fourth the length of those
formed by the roads in the case at bar.    *Commonwealth*

v. *Cambridge,* 7 Mass. 157, is a case wherein the petition prayed for an alteration, and stated that the existing road might with greater convenience be turned or altered in two places, in the direction therein described. The lower court adjudged that one of the alterations be made, but that the existing road should not be discontinued. The court on appeal says: "The jurisdiction given to the court is to lay out new county roads, or to turn or alter old roads, on application made to the court. * * * The matter in dispute was whether an existing road should be partially altered, or not; the adjudication was against the alteration prayed for, but in favor of a new road, where the alteration was requested, a new road then not being prayed for. In form, therefore, it appears that the adjudication was not of the matter in dispute. Whether it was or was not substantially, deserves consideration. So far as an alteration is a charge upon the town it is reasonable they should prefer the alteration to a new road, because in this last case the old road remains a subject of repair, while the new road requires also to be made and repaired. But where there is an alteration, the part of the old road that is discontinued ceases to be a charge upon the inhabitants. It may, therefore, be well supposed that when an alteration is prayed for, it may not be opposed by a town; but their agents may unite with the petitioners in requesting it, while they would earnestly oppose a new road. With respect to individuals whose interest · may be affected, they may not oppose a new road, because the old road remains for them to pass, while they might resist an alteration, as discontinuing an old road convenient to them. * * * We are obliged to conclude that the alteration of an old way, and the establishment of a

new one, are substantially different, and differently affect the opposing parties."

These considerations have cogent application to the case in hand. The petition here is in form for the establishment of a new road and the vacation of an old one, but is it in substance a petition for an alteration? and can it be treated in that light in consideration of the relation which the old road bears to the new, their respective lengths, and their connections with other public roads of the county? The proposed new road is twenty-eight and eighty-three hundredths chains in length, and the road required to be vacated forty-one and ninety-five hundreths. They diverge one from the other at an angle of more than forty-five degrees, and intersect the same public road on the south thirty and nine hundreths chains apart. The road to be vacated constitutes a part of what is known as the Shuck's Mill and Woodburn Road, the base of the triangle serving as a part of the Shuck's Mill and Gervais Road. The new way increases the distance to Shuck's Mill from Woodburn almost nineteen chains. Under these conditions it cannot be said that the new supersedes the old and renders it unnecessary. The respective lengths of the two roads are so great and their divergence so marked as to dispel the idea that the one is to supersede the other, or that the location of the one will render the other unnecessary. These conditions being wanting, the petition cannot be considered as substantially one for an alteration only. The county court properly considered the petition as the commencement of two proceedings, the one for a location and the other for a vacation of a county road. The former opinion of the court is therefore adhered to.          AFFIRMED.

Mr. Chief Justice BEAN (dissenting). I am unable to agree with my brethren in this case. In my opinion the petition in question is in effect an application for the alteration of an existing county road, and should have been so treated by the county court.